STATE OF MISSOURI, TO USE OF THE BOARD, ETC., OF PUBLIC SCHOOLS, Respondent, *v.* HERMAN RECHTIEN ET AL., Appellants.

### June 17, 1879.

1. The office of treasurer of St. Louis County having been in 1876 abolished by the adoption of the Scheme and Charter, the treasurer became a mere custodian of the township school-funds in his hands, and his refusal to turn them over upon the joint demand of the School Board and the County Court cannot be justified on the ground that these agencies were about to divide the funds in a manner not warranted by law.

2. The laws requiring warrants for official disbursements have no application to the duty of a retiring officer in turning over his charge to his successor.

3. A treasurer's bond which covers "funds for school purposes belonging to the different townships, arising from whatever sources," covers all school-funds, both county and township, which come into the treasurer's hands, whether capital or increase.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

HENRY B. O'REILLY, for appellants: As to the liability of the treasurer and the construction of his bond, see *The State to use* v. *Johnson*, 55 Mo. 84.

E. W. PATTISON, for respondent, cited: *The State* v. *Thompson*, 49 Mo. 188; *Hoshaw* v. *Gullett*, 53 Mo. 208; *The State* v. *Johnson*, 55 Mo. 80.

LEWIS, P. J., delivered the opinion of the court.

This suit is in the name of the State of Missouri, to the use of the Board of President and Directors of the St. Louis Public Schools, the County Court of St. Louis County, and Thomas T. January, treasurer of said county, against Herman Rechtien as principal, and the other defendants as sureties, in a penal bond for $75,000, executed in November, 1874. The condition of the obligation is that, "whereas the above bounden Rechtien is, by virtue of his office as county treasurer of St. Louis County, the treasurer of all funds for school purposes belonging to the different townships of said county, arising from whatever sources; now, if said Rechtien shall faithfully disburse according to law all such funds as shall from time to time come into his hands, then this obligation to be void, else of full force and effect."

Defendant Rechtien's office as county treasurer was abolished by the adoption of the Scheme and Charter, October 20, 1876. He then had in his hands $6,415.73 of school-moneys belonging to townships and districts lying partly inside and partly outside of the new city limits, and $7,218.16 of the county school-capital. On June 11, 1877, the new County Court of St. Louis County made an order, and on June 12 the St. Louis School Board adopted a resolution to like effect, that the late county treasurer pay over to the Board of President and Directors of the St. Louis Public Schools the funds above mentioned. It seems to be understood that the object of this arrangement was to effect a division of the moneys between the city and the new county, upon the basis provided in the scheme of separation. The secretary of the St. Louis School Board thereupon made a demand upon defendant Rechtien, in accordance with the order and resolution, but Rechtien refused to pay over.

Counsel for defendants, in an elaborate and skilfully prepared argument, present a number of defences, some of

which might be admissible if Rechtien were still in office as county treasurer, but all of which are out of place in view of the fact that he is a mere bailee or custodian of property whose rightful control is admitted to reside in another. When thoroughly sifted, the principal defences have no better foundation than this: that although the St. Louis School Board and the new County Court are invested by the supreme authority with a superintending control and management of all public-school moneys within the city and county, yet because it is apparent that these public agents propose to divide or classify them in a manner not authorized by law, therefore he, who has no voice, control, trust, or discretion whatever in the matter, may tie their hands by an arbitrary refusal to surrender what the law makes theirs for a proper discharge of their trust. Whether the division of a township by the new city boundary-line, and a resulting apportionment to the inhabitants of the several divisions, may involve a destruction of the township unity originally intended; whether the freeholders were justifiable in enlarging their limited undertaking into a system of organic laws for city and county; whether the "enumeration" provided for in sect. 38 of the Scheme ought to have been made, or whether it was unauthorized by the Constitution, — all these are matters with which the defendants have nothing whatever to do in the present controversy. If every position taken on these points were unassailable, the facts would still remain that defendant Rechtien is not even *de facto* county treasurer, and is not the lawful custodian of any public-school moneys whatever; that, from whatever sources the moneys retained by him were derived, or in whatsoever manner to be distributed, either one or the other, or both, of the public agencies who here sue are appointed by law to preserve, manage, and control them, in one interest or another. The authority of both these agencies was consolidated in the order of the County Court directing payment to the St. Louis School Board, and

in the resolution of the latter accepting the trust. A payment of the money and a receipt taken by Rechtien in conformity with this arrangement would have operated a full acquittance and discharge to him and his sureties against all the world. The position taken that, as treasurer, he could only pay out the money upon warrants drawn by the proper officers, deserves little attention. He was not treasurer, and could not be officially recognized as such. The laws requiring warrants for official disbursements have no application to the duty of a retiring officer in turning over his charge to his successor.

It is contended that some of the moneys sued for are not within the terms of the bond, because that instrument covers only "funds for school purposes belonging to the different townships," etc., and some of the money claimed pertains to the county school-fund. There is no propriety in such a limited interpretation of the bond. Both county and township funds have uniformly been applied to their legitimate objects through township agencies or upon township classifications. The expression, "belonging to the different townships," is simply intended to indicate the universality of the obligation, as applying to all funds for school purposes which may come into the hands of the treasurer, "arising from whatever sources." It is claimed, also, that the use of the word *belonging* excludes the capital fund, because the control of that is always retained by the county, and only the increase goes to the townships. But, in the connection in which it appears, the only rational interpretation will make it embrace whatever is held to the use of the townships. In the beneficial sense, the fund belongs to the townships. This disposes also of the objection that, as to the capital fund, the defendant was liable only on his general bond as treasurer of the county. The bond here sued on was intended to cover all school-moneys, whether capital or increase. This construction is sustained by *The State to use* v. *Johnson*, 55 Mo. 81.

The Circuit Court did rightly in declaring the defendants' liability in this action for the school moneys shown to have been retained and converted as stated in the petition. The judgment is affirmed.   All the judges concur.